IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW J. NASUTI, on behalf of the United States of America, | § § § | Civil Action No. _____ |
| Plaintiff/Relator, | § § | FILED UNDER SEAL |
| vs. | § § | JULY TRIAL DEMANDED |
| SAVAGE FARMS, INC., a Massachusetts Corporation, JAY G. SAVAGE, an individual, JOSEPH KOSTIUK, JR., an individual, KENNETH S. WILLIAMS, III, an individual, and KENNETH S. WILLIAMS, IV, an individual. | § § § § § § § § | |
| Defendants. | § § | |

### ORIGINAL COMPLAINT UNDER THE FALSE CLAIMS ACT
(31 U.S.C. §§3729-3733 et seq.)

Matthew J. Nasuti, (hereinafter "Relator") brings this *qui tam* action in the name of the United States of America, and alleges as follows:

1. Defendants are farmers in Massachusetts who claimed flood damage as a result of the passage of Tropical Storm Irene in August 2011. Through false and misleading statements, certifications and omissions they obtained the following disaster relief from the following USDA programs:

| **Defendants** | **Emergency Conservation Program (ECP)** | **Environmental Quality Incentives Program (EQIP)** |
|---|---|---|
| **Kenneth Williams, III:** | $200,000.00 | |
| **Kenneth Williams, IV:** | $200,000.00 | |
| **Savage Farms/Jay Savage:** | $200,000.00 | $147,645.00 |
| **Joe Kostiuk:** | $200,000.00 | $58,405.00 |
| | **$800,000.00** | **$206,050.00** |

## PARTIES

2. Relator is and has been for all time-periods relevant to this Complaint, a resident of the Commonwealth of Massachusetts, residing in Deerfield, MA. He has standing to file this action pursuant to the False Claims Act (18 U.S.C. §§3729-3733 et seq) and will proceed as the representative of the United States if this action is declined by the U.S. Department of Justice.

3. Defendant Savage Farms, Inc. is a Massachusetts Corporation, whose address is 128 Lower Road, Deerfield, MA 01342. Its President is John G. Savage Jr. and its Agent for Service of Process is Jay G. Savage. While it calls itself a "farm", this corporation does not meet the USDA definition of a "farm" as set out in 7 C.F.R. §718.2 because it owns no farmland. It operates on farm properties owned by others, including John G. Savage Realty, Co., Joseph Kostiuk, Jr., and Kenneth S. Williams III and IV. It also operates an interstate trucking business under its "farm" name.

4. Defendant Jay G. Savage is a resident of the State of Massachusetts residing at 100 Lower Road, Deerfield, MA. He is the President of John D. Savage Realty Corporation, and the Treasurer/Secretary for Savage Farms, Inc. These corporations do not observe corporate formalities and are the alter egos of Defendant Jay Savage. Jay Savage applied for USDA funding in this case by misrepresenting himself as "President" of Savage Farms, Inc., when he is not the President.

5. Defendant Joseph Kostiuk, Jr. is an individual residing at 18 Upper Road, Deerfield, MA. 01342. He reportedly owns more than 50 acres of farmland along Lower Road in Deerfield, MA, upon which Savage Farms, Inc. operates.

6. Defendant Kenneth S. "Sandy" Williams, III is an individual residing at Main Street, Deerfield, MA. He co-operates a farm with his son Chip called the "Williams Farm." That farm grows vegetables on parcels located within the Old Deerfield Historic District.

7. Defendant Kenneth S. "Chip" Williams, IV is an individual residing at Main Street, Deerfield, MA. He co-operates a farm with his father Sandy called the "Williams Farm." That farm grows vegetables on parcels located within the Old Deerfield Historic District. Those parcels are located West of Old Mill Road in Old Deerfield. Defendant Chip Williams is a member of the Town of Deerfield's Agriculture Commission. He also sits on the USDA's Franklin County FSA Committee that approved $200,000 in grants to himself and his father for their jointly owned Deerfield farm. Those grants are a subject of this lawsuit.

8. The ECP is a disaster relief fund. Funding is provided by USDA to USDA offices in disaster States. They are to distribute the funds only to eligible parties and for eligible practices. Any funds not distributed are to be promptly returned to D.C. to await the next disaster. If the funds are paid out fraudulently, the limited ECP funding is depleted by that amount and is not available for the next disaster within that fiscal year. What this means is that the victims of Defendants' fraud are not simply the American taxpayers, but they include small farmers who were blocked from obtaining Federal funding due to Defendants' misconduct. For FY2012, Congress appropriated limited funding for the ECP and EQIP. When ineligible parties fraudulently obtain these funds, that depletes the pool of available monies, which leaves legitimately needy farmers without any assistance. How many small farm families were denied USDA assistance because of Defendants' schemes may never be known.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under the False Claims Act (30 U.S.C. §§3729 et seq), [also known as the "Lincoln

Law"] and Section 3732(a) specifically confers jurisdiction on U.S. District Courts.

10. This Court is the proper venue for this action because all the parties reside in this District and because the alleged offenses were committed within this District.

## STATEMENT OF FACTS

**Legal Authority for U.S. Department of Agriculture (USDA) Grants:**

11. The ECP was authorized by Congress in **The Agricultural Credit Act of 1978** (16 U.S.C. §§2201-2205). It is managed by the USDA's Farm Service Agency (FSA), which implements the program in accordance with 7 C.F.R. Part 701 and pursuant to the FSA's ECP guidance document entitled: "1-ECP."

12. The EQIP was authorized by Congress in **The Food, Conservation and Energy Act of 2008.** It is managed by USDA's Natural Resources Conservation Service (NRCS), which implements the program in accordance with 7 C.F.R. Part 1466.

**Background:**

13. On or about August 28, 2011, Western Massachusetts was subjected to the passage of "Tropical Storm Irene." The storm caused the Deerfield River to crest in several locations which caused the temporary flooding of some adjacent farm properties that were situated in its flood plain. The flood waters deposited rocks, river sands and other sediments in some areas within the town of Deerfield, MA.

14. Within a few days of the passage of Irene, Savage Farms and Williams Farm personnel were operating heavy equipment on properties they farm along the Deerfield River in Deerfield, MA. Their activities included, debris removal, excavation, field scraping, soil and sediment removal and the stockpiling of Deerfield River sediments. Defendants transported

Deerfield River sediments between their fields, and they pushed and dumped thousands of tons of sediments off of their fields and toward the Deerfield River. They used the sand and sediment to create 10-foot high levees that parallel the Deerfield River. In some cases the levees were illegally bulldozed into the 200-foot buffer zone bordering the Deerfield River, established under the State of Massachusetts' River Protection Act; in some cases the levees were pushed right up to the water' edge; and in still further cases, the river sediments were excavated and then illegally dumped at one or more sites in Western Massachusetts; all of this work was eventually paid for with USDA "conservation" and "environmental improvement" funding.

15. During this time, Defendants approached USDA about obtaining federal grants for the cleanup work. The primary Federal disaster relief program for farmers within the Federal Government is the ECP; however Congress had failed to appropriate any funds for the ECP for FY2012, therefore Defendants approached USDA's Natural Resources Conservation Service (NRCS) and applied for cleanup grants under the Environmental Quality Incentives Program (EQIP), even though that program is not authorized for disaster relief.

16. EQIP is supposed to fund environmental enhancement and conservation practices, especially water conservation, irrigation efficiency and energy efficiency programs. The priority is to fund the above projects and to provide funding to: limited resource farmers, beginning farmer and socially disadvantaged farmers. Despite the fact that Defendants were not eligible for EQIP, Defendants Savages and Kostiuk received $206,050.00 in EQIP funding.

17. In early 2012, when Congress had funded the ECP, all of the Defendants applied for that program also, even though none of them met any of the qualifications for that program. They each thereafter received a $200,000.00 ECP grant.

**Defendants Were Not Financially Eligible for These Grants:**

18. Congress designed the ECP and the EQIP to provide emergency assistance to small farms that could not afford to undertake the disaster response work without Federal funds. The Federal funds must be "essential" to the response work (See 7 C.F.R. §701.12) and but-for the Federal funding, the response work would never have occurred.

19. Applicant eligibility is determined by assessing the financial status of the party compared to the true cost of the necessary disaster response. The tests are that the damage to the applicant's farmland must be significant and so costly to repair that the repair work will not take place without Federal financial assistance (i.e., the applicant lacks the financial resources to undertake the repairs).

20. The Williams Defendants are two of the largest landowners in Deerfield. Their properties that were impacted by Tropical Storm Irene account for only a tiny percentage of their farmlands (the percentage has not been presently calculated due to the sheer volume of parcels they own in Deerfield and neighboring Sunderland). According to Town of Deerfield records the Williams Defendants own more than 33 real estate parcels in Deerfield alone, including commercial properties located at 477 Greenfield Road, valued at $605,000.00 and 36 Old Main Street, valued at $547,000.00. They also own farmland in neighboring Sunderland.

21. The Savage Defendants likewise own substantial amounts of real estate, in addition to equipment and their tractor trailer fleet (for their interstate trucking company). Just on Lower Road in Deerfield alone, the Savages own real estate valued well in excess of $2 million. On information and belief they farm in other areas of the State including in Greenfield and Northfield.

22. In summary, The Defendants in this case are all wealthy, with the Savages and

Williams being multimillionaires. They did not need Federal funding, therefore they were ineligible for the funding. If the Defendants had made full disclosure and revealed their true financial assets, they would not have qualified for either program, and USDA would not and could not have made an award to them.

23. One of the tests USDA uses to ensure that the Federal funds are truly needed, it that the applicants cannot begin any of the work until they have formally applied for ECP funds (See 7 C.F.R. §701.15) or until they have been approved for EQIP funding (See 7 C.F.R. §1466.21).

24. The theory behind these rules is that any applicant who begins their response work without any guaranty of Federal funding, is prepared to undertake the work regardless of Federal funding, therefore the funding is not needed. Beginning the work therefore bars any funding. In this case Defendants all began their restoration work months before applying for funding. If they had been truthful with USDA, that should have resulted in a denial of any grant funding.

25. In order to perpetrate their fraud, Defendants misled USDA regarding when they began their response work. In fact, much of the response work had already been completed by the time Defendants applied for or were approved for these USDA funds. In the case of the Savages, they fraudulently backdated their ECP applications by two months to August 31, 2011 in an attempt to evade these restrictions, and then falsely certified that the work **"would not be performed without Federal Cost-Sharing"** (even though the work was mostly completed by the true date of Jay Savage's certification). The same false certification was made by all the Defendants.

**These Were Not Eligible Projects or "Practices:"**

26. USDA only permits ECP funding for "emergency situations" (See FSA's Guidance Document, "1-ECP") and there was no emergency. Defendants misled USDA regarding the facts.

7

For example, the Savage Defendants admits on their Internet web site that they farm more than 800 acres, yet they apparently never revealed that information to USDA. Instead they sent a dire September 1, 2011 letter to USDA. In that letter they informed USDA that 55 acres required restoration. If they had provided all their information to USDA, it would have been clear that this was less than 6.9% of their farmland. The final number is undoubtedly even lower, but the Defendants continue to conceal the total acreage that they farm.

27.     Regarding the Williams Defendants, it appears that the flooding may have impacted only three or four of their 33+ parcels. Again there was no full disclosure to USDA. In conclusion, the flooding did not materially impact the Defendants (i.e., there was no emergency).

**The Work Was Not Performed Within the Scope of the USDA Grants:**

28.     Defendants obtained their funding by misrepresenting the scope of work to USDA. As a result, they were paid for different work on different farm parcels, with no explanation for the discrepancy. When applying for EQIP funds, Defendants convinced USDA to pay them at the rate of $7,382.25 per acre instead of the standard $1,476.00 per acre that is set out in USDA's FY2012 EQIP Practice Schedule. Essentially they told USDA that the 27.5 acres needed to have sand and river sediments excavated and hauled off-site. However when Defendants applied for ECP funds, they represented that on the balance of their acreage, they were going to simply push the sand and river sediments off the agricultural fields, with no off-site disposal. They never explained the discrepancy (i.e., why did any sand and sediments have to be hauled off-site?).

29.     The reason for the misrepresentation is that Defendants used USDA funds to pay for the shipment of the river sediments between their parcels; specifically they hauled more than 1000 tons of such sediments from Kostiuk properties to John D. Savage Realty properties for use in

constructing massive dirt levees along the Deerfield River in order to help prevent future flooding. They also hauled topsoil between their parcels, which was not authorized under the USDA grants. Hauling waste sand and sediment between their properties was beyond the scope of the ECP and EQIP programs and the work violated the Massachusetts wetlands and river protection laws because the levees were created inside of the 200-foot protected buffer zone of the Deerfield River. That buffer zone was established by the Massachusetts Rivers Protection Act. Defendants misled USDA into paying $7,300 an acre when at most $1,400 an acre was all that was justified. If Defendants Savages/Kostiuk had made a full and truthful disclosure to USDA, they would never have received EQIP funding or funding at the levels they received.

### Defendants' Work Was Subject to NEPA, But Defendants Misled USDA:

30. USDA is required to comply with the National Environmental Policy Act (NEPA) for all projects which it authorizes and/or funds. USDA obtained a waiver from NEPA for the ECP and EQIP by producing what it calls a PEIS, which stands for a "programmatic environmental impact statement." Under its PEIS, USDA claims that work on farm fields and within the existing agricultural footprint of the parcels is exempt from further environmental reviews as the impacts to the environment are presumed to be minimal. In the case at bar, Defendants failed to inform USDA that some of the work would in fact be taking place **outside** the environmental footprint and **inside** the protected 200-foot Deerfield River buffer zone (where the levees were being constructed).

31. In addition, the Williams Defendants failed to inform USDA that their impacted parcels lie within the National Park Service's Old Deerfield Historic District. If all of this had been disclosed to USDA, these projects would have faced mandatory and potentially lengthy NEPA reviews and may never have been funded.

**Defendants Violated the Ceiling Amounts Per "Practice:"**

32. Congress, under its ECP, has set out a $200,000.00 ceiling amount on awards per person and per practice for each disaster. Likewise, USDA regulations prohibit duplicative payments. Despite that, Defendants Kenneth Williams III and Kenneth Williams IV received a total of $400,000.00 for restoration of the same farm; and Defendants Savages and Kostiuk received a total of $400,000.00 for restoration of some of the same farmland.

33. The Williams Defendants operate a jointly owned farm called the Williams Farm. For years they have been applying to USDA for crop support and other grants under the farm name. However when they applied for the ECP, they did not apply in the farm name but under their individual names so that they could each receive $200,000. This is a standard fraud tactic against USDA. This tactic was also used by Savage Farms, Inc./Jay Savage, and Joe Kostiuk who each applied for and received $200,000 for some of the same properties and work. Defendants violated the USDA's rules as set out in 5 C.F.R. §701.11 and misled the USDA into approving the multiple awards.

**Defendants Violated the 75%/25% Cost-Sharing Rule:**

34. Congress established the ECP as a cost sharing program and directed that all applicants must contribute at least 25% of the actual reasonable costs. To enforce this, USDA requires that the applicants submit credible estimates of the restoration work, which then sets the benchmarks for the Federal Government's and applicant's shares. The Savages Defendants submitted to USDA their one paragraph February 24, 2012 invoice from themselves to themselves in the amount of $826,000.00. That is not a credible cost estimate.

35. In the case at bar, the Williams Defendants misled USDA into paying 100% of the

costs. In or about June 2012, Defendant Kenneth Williams IV boasted to a local newspaper called The Recorder that the restoration of the farm he and his father own cost $400,000.00 and he falsely informed the Recorder that USDA had paid for 75%. USDA records reveal that the USDA paid the Williams $400,000.00 (i.e., 100%), therefore Defendants evaded the cost-sharing requirement.

36. USDA has promulgated, under 7 C.F.R. §701.11, a rule to help enforce this cost-sharing provision. It prohibits the applicants from receiving any other funding for the same practice. The idea is that each applicant must themselves be personally liable for all of their 25% share.

37. In the case of the Savages/Kostiuk; they received EQIP funding for some of the same farmland that they received ECP funding for, which is illegal.

38. In addition, while the Williams were made whole, the Savages/Kostiuk made a profit. The Williams Defendants stated that they needed $400,000.00 to restore 90 acres, while the Savages/Kostiuk received a total of $606,050.00 in EQIP and ECP funding to restore 55 acres. This provided them an illegal profit of more than $300,000.00. Again, there was no cost-sharing.

**Defendants Failed to Provide Credible Backup Documentation to Support Their Claimed Costs:**

39. USDA rules require that the applicants provide detailed cost data so that an audit could be conducted to ensure that the work was actually performed. Defendants failed to provide USDA with any credible or detailed accounting of the costs expended, that being an indicator of fraud. Savage Farms merely submitted a bill from itself to itself for $826,000.00, which is clearly suspect. There is insufficient evidence that all of the alleged work was performed as represented and at the cost represented.

40. In addition, the Savages/Kostiuk make repeated conflicting statements to USDA

regarding the acreage impacted.

- Defendants in 2011 represented that a total of **55 acres** needed to be restored.

- Defendants then obtained $206,050 from USDA in EQIP funds to restore **27.5 acres.**

- However when ECP funding became available in 2012, the Defendants (as they were being paid per acre by USDA) increased their claim. In 2012 they claimed they needed to restore not the remaining **27.5 acres but 70 acres.**

As the acreage inexplicably increased, so did Defendants' claims about their alleged losses.

     41.    USDA's Records Reveal the Following:

- USDA's Cost Estimate for restoration:     **$1,881.00/acre.**

- The Williams Defendants' claim for their restoration work:     **$4,444,44/acre.**[1]

- The Savages/Kostiuk Defendants' claim for their restoration work cost:     **$11,250.00/acre.**[2]

     42.    The fact that the Savages/Kostiuk sought and obtained payment at almost three times the cost per acre as the Williams and more than six times the USDA estimate should have alerted USDA to the fraudulent scheme. This is especially evident as the Williams and Savages/Kostiuk properties are next door to each other but on different sides of the narrow Deerfield River. They were subjected to the same flooding and should have had the same or similar restoration costs.

\ \ \

\ \ \

\ \ \

---

    [1]    90 acres at a cost of $400,000.00.

    [2]    70 acres at a cost of $826,000.00

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FALSE CLAIMS ACT - 31 U.S.C. §§ 3729(a)(1)(A)

## DEFENDANTS SAVAGE FARMS, INC., JAY G. SAVAGE AND JOSEPH KOSTIUK, JR.

43. Relator realleges and incorporates by reference Paragraphs 1 through 42 above as though fully set forth herein.

44. During the period of September 1, 2011 to January 31, 2012, Defendants knowingly and willfully caused one or more false claims to be presented to the U.S. Government, specifically to the United States Department of Agriculture's Natural Resources Conservation Service (NRCS), in order to receive one of more grants under the Environmental Quality Incentives Program (EQIP).

45. Defendants' false and misleading statements, certifications and omissions of material information caused officials at NRCS to award Defendants Savage Farms, Inc./Jay Savage, and Joseph Kostiuk, Jr., grants in the amounts of $147,645.00 and $58,405.00 respectively.

46. The payments to Defendants under EQIP 2008-74132012090 and 2008-7413201207G respectively would not have been and could not legally have been made but for Defendants' false statements, misrepresentations and omissions.

47. Defendants' conduct violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A).

48. The United States has been injured and herein seeks relief as set out in the Prayer for Relief.

\\\

\\\

\\\

\\\

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FALSE CLAIMS ACT - 31 U.S.C. §§ 3729(a)(1)(A)

### DEFENDANTS SAVAGE FARMS, INC., JAY G. SAVAGE AND JOSEPH KOSTIUK, JR.

49. Relator realleges and incorporates by reference Paragraphs 1 through 48 above as though fully set forth herein.

50. During the period of August 31, 2011 to March 1, 2012, Defendants knowingly and willfully caused one or more false claims to be presented to the U.S. Government, specifically to the United States Department of Agriculture's Farm Service Agency (FSA), in order to receive one of more grants under the Emergency Conservation Program (ECP).

51. Defendants' false and misleading statements, certifications and omissions of material information caused officials at FSA to award Defendants Savage Farms, Inc./Jay Savage $200,000.00, and Joseph Kostiuk, Jr. $200,000.00.

52. The payments to Defendants under the ECP would not have been and could not legally have been made but for Defendants' false statements, misrepresentations and omissions.

53. Defendants' conduct violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A).

54. The United States has been injured and herein seeks relief as set out in the Prayer for Relief.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE FALSE CLAIMS ACT - 31 U.S.C. §§ 3729(a)(1)(A)

### DEFENDANTS KENNETH WILLIAMS, III and KENNETH WILLIAMS IV

55. Relator incorporates by reference Paragraphs 1 through 54 above as though fully set

forth herein.

56.   During the period of August 31, 2011 to January 31, 2012, Defendants knowingly and willfully caused one or more false claims to be presented to the U.S. Government, specifically to the United States Department of Agriculture's Farm Service Agency (FSA), in order to receive one of more grants under the Emergency Conservation Program (ECP).

57.   Defendants' false and misleading statements, certifications and omissions of material information caused officials at FSA to award Defendants Kenneth S. Williams, III $200,000.00, and Kenneth S. Williams, IV $200,000.00.

58.   The payments to Defendants under the ECP would not have been and could not legally have been made but for Defendants' false statements, misrepresentations and omissions.

59.   Defendants' conduct violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A).

60.   The United States has been injured and herein seeks relief as set out in the Prayer for Relief.

### PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment for the United States, as follows:

1.   Reimbursement to the United States of all ECP and EQIP funds fraudulently paid, which is at least $1,006,050.00, the final amount to be determined at trial;

2.   The United States is entitled to three times the amount it was damaged by each Defendant, to be determined at trial;

3.   A civil penalty from each Defendant of not less than $5,000 and not more than $10,000 (adjusted for inflation) for each false claim presented, paid or approved.

4.  All costs, prejudgement interest/cost of money; attorneys' fees and other such damages as this Court should deem fair and just;

Respectfully submitted,

DATED: July 8, 2012       By: _____
                              MATTHEW J. NASUTI
                              138 Lower Road
                              Deerfield, MA 01342
                              Telephone (413) 774-2870
                              *mattnasuti@hotmail.com*
                              Plaintiff